Exhibit A

19STCV12723

Ⓢ 5-21-19
@ 1:49pm  G.S.

Electronically FILED by Superior Court of California, County of Los Angeles on 04/11/2019 12:36 PM Sherri R. Carter, Executive Officer/Clerk of Court, by K. Vargas, Deputy Clerk

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

GENERAL DYNAMICS LAND SYSTEMS; and DOES 1-100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MATTHEW MADDUX

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of Los Angeles
111 N. Hill Street, Los Angeles, CA 90012

**CASE NUMBER:**
*(Número del Caso):*
19STCV12723

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Paul R. Kiesel (SBN 119854), Melanie Palmer (SBN 286752), KIESEL LAW LLP 8648 Wilshire Blvd., Beverly Hills, CA 90211; Tel: (310) 854-4444

**DATE** *(Fecha)* 04/11/2019  Sherri R. Carter Executive Officer / Clerk of Court  **Clerk, by** *(Secretario)* Kristina Vargas  **Deputy** *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☒ on behalf of (specify): General Dynamics Land Systems
   under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☒ by personal delivery on (date): 5-21-19

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

19STCV12723
Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Laura Seigle

Electronically FILED by Superior Court of California, County of Los Angeles on 04/11/2019 12:36 PM Sherri R. Carter, Executive Officer/Clerk of Court, by K. Vargas, Deputy Clerk

Paul R. Kiesel, State Bar No. 119854
 kiesel@kiesel.law
Melanie Meneses Palmer, State Bar No. 286752
 palmer@kiesel.law
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel.: 310-854-4444
Fax: 310-854-0812

Jason A. Itkin (*Pro Hac Vice Pending*)
 jitkin@arnolditkin.com
Noah M. Wexler (*Pro Hac Vice Pending*)
 nwexler@arnolditkin.com
**ARNOLD & ITKIN LLP**
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

Attorneys for Plaintiff
Matthew Maddux

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| MATTHEW MADDUX<br><br>*Plaintiffs*,<br><br>v.<br><br>GENERAL DYNAMICS LAND SYSTEMS; and DOES 1-100, inclusive,<br><br>*Defendants*. | Case No. 19STCV12723<br><br>**COMPLAINT FOR DAMAGES AND FOR**<br><br>1. **NEGLIGENCE**<br>2. **STRICT PRODUCT LIABILITY**<br>3. **BREACH OF WARRANTIES**<br>4. **EXEMPLARY DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

00523027-1

COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff **MATTHEW MADDUX** (hereinafter referenced as "Plaintiff"), in the above-entitled action and for causes of action against Defendants **GENERAL DYNAMICS LAND SYSTEMS,** a corporation (hereinafter **GDLS**); and DOES 1-100, inclusive, and each of them, who complains and alleges as follows:

## GENERAL ALLEGATIONS

1. This is a civil action brought on behalf of Plaintiff for the injuries and economic damages sustained as a direct and proximate result of the negligent and wrongful conduct of Defendants in connection with the manufacturing, construction, assembly, sale, and breach of warranties of the M1A1 Abrams Tank (S/N 579692) and its component parts that malfunctioned on or about April 16, 2017 at Marine Corps Air Ground Combat Center ("MCAGCC") in Twenty Nine Palms, California.

2. Plaintiff alleges an amount in controversy in minimal jurisdictional limits of this Court.

3. At all times alleged herein Plaintiff Matthew Maddux was in an on duty capacity and drilling status as a member of the United States Marine Corp.

4. GDLS is a Delaware Corporation that manufactured, assembled, inspected, tested, marketed, distributed and sold the M1A1 Abrams main battle tank at issue in this matter.

5. GDLS conducts substantial activities in and purposely avails itself of the laws of California such that it is at home in California.

6. At all times material to this action, GDLS and/or their predecessors in interest and/or its subsidiaries, regularly engaged in business in California, including advertising, assembling, developing, distributing, inspecting, labeling, manufacturing, marketing, producing, promoting, selling, testing, and/or training in the use of the M1A1 Abrams.

7. GDLS regularly solicits and transacts business in, receives substantial revenues from, and/or distributes products in California.

8. It was reasonably foreseeable to Defendant that the M1A1 Abrams would be used by individuals including Plaintiff in the state of California.

9. GDLS has and continues to conduct business in the state of California.

10. GDLS committed tortious conduct within the state of California.

11. GDLS used or possessed property situated in the state of California.

12. GDLS marketed, promoted, and sold its M1A1 Abrams and other products and/or services in the state of California.

13. GDLS's contacts with the state of California were at all relevant times systematic and continuous such that the exercise of jurisdiction comports with the notions fair play and substantial justice.

14. GDLS tested, assembled, manufactured, marketed, and sold the M1A1 Abrams main battle tank at issue in the incident giving rise to this suit and placed it in the stream of commerce knowing that the tank would be used by individuals such as Plaintiff in California.

15. Upon information and belief, GDLS delivered the tank at issue to the United States Marine Corps in California.

16. GDLS may be served through its registered agent: **The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, MI 48170.**

17. The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise, of defendants DOES 1-100, inclusive, are unknown to Plaintiff who therefore sue said defendants by such fictitious names. The full extent of the facts linking such fictitiously sued defendants is unknown to Plaintiff. Plaintiff is informed and believes, and thereupon alleges, that each of the defendants designated herein as a DOE was, and is, negligent, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby negligently, or in some other actionable manner, legally and proximately caused the hereinafter described injuries and damages to Plaintiff. Plaintiff will hereafter seek leave of the Court to amend this Complaint to show the defendants' true names and capacities after the same have been ascertained.

18. Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein, defendants, and each of them, including DOES 1-100, inclusive, and each of them, were agents, servants, employees, successors in interest, and/or joint venturers of their co-defendants, and were, as such, acting within the course, scope, and authority of said agency,

employment, and/or venture, and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other defendant as an agent, servant, employer, successor in interest, and/or joint venturer.

19. This Court has jurisdiction of this matter pursuant to California Code of Civil Procedures §§ 377.60 and 377.61 for damages in excess of TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00), exclusive of interest, costs and attorney fees.

20. Venue in this Court is proper pursuant to § 395(a) of the California Rules of Civil Procedure as the incident and injury made the basis of this suit occurred in Los Angeles County.

## TOLLING OF STATUTE OF LIMITATIONS

21. Plaintiff assert all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including equitable tolling, delayed discovery, discovery rule, and/or fraudulent concealment.

22. Despite diligent investigation by Plaintiff into the cause of his injuries and damages, the nature of Plaintiffs' injuries and damages and their relationship to any component part of the M1A1 Abrams and/or the conduct of any party not specifically named herein, was not discovered, and through reasonable care and due diligence could not have been discovered, until a date within the applicable statute of limitations for filing Plaintiff's claims. Therefore, under appropriate application of the discovery rule, the addition of any additional Defendant not currently named herein should related back to the original date of this Complaint as Plaintiff's suit was filed within the applicable statutory limitations period.

## FIRST CAUSE OF ACTION

## (NEGLIGENCE)

COMES NOW, Plaintiff, and for his first cause of action against Defendant GDLS and DOES 1-100, and complains and alleges as follows:

23. Plaintiff hereby re-alleges and incorporates herein by reference all the prior paragraphs.

24. Plaintiff is informed and believes, and thereupon alleges, that at all times herein Defendants GDLS and DOES 1-100 inclusive, and each of them, were engaged in the business of

manufacturing, testing, marketing, distributing, selling and monitoring its products in the market place including the subject Abrams tank.

25. Plaintiff is informed and believes, and thereupon alleges, that at all times herein Defendants GDLS and DOES 1-100 were negligent and such negligence was the proximate cause of the occurrence in question by virtue of the following.

26. At all relevant times, Defendants GDLS and DOES 1-100 were manufactured, inspected, tested, installed, marketed, maintained, repaired, sold, distributed, delivered, and performed other services for the M1A1 Abrams tank at issue and/or one or more of its component parts, which was delivered to and located at MCAGCC at all relevant times, pursuant to contractual agreement with the US Marine Corps (hereinafter USMC).

27. Based upon information and belief, Defendants GDLS and DOES 1-100 were negligent in connection with manufacturing, inspecting, testing, installing, marketing, maintaining, repairing, selling, distributing, delivering, and performing other services for the M1A1 Abrams tank at issue and/or one or more of its component parts, which was delivered to and located at MCAGCC at all relevant times.

28. Defendants GDLS and DOES 1-100 failed to manufacture, inspect, test, install, market, maintain, repair, sell, distribute, deliver, and/or perform other services for the M1A1 Abrams tank at issue and/or one or more of its component parts to meet the basic safety standards required by USMC and/or other applicable regulations or contractual specifications for such a product.

29. As a direct and proximate result of Defendants GDLS and DOES 1-100's conduct, the M1A1 Abrams tank at issue and/or one or more of its component parts was out of compliance with the contractual and/or safety requirements set forth by USMC and/or other applicable regulations or specifications on MCAGCC and which as alleged proximately caused injury to Plaintiff.

30. As a direct and proximate result of Defendants GDLS and DOES 1-100's conduct in the manufacture, inspect, test, install, market, maintain, repair, warranty, sale, distribution, deliver, and performance of other services for the M1A1 Abrams tank at issue and/or one or more

of its component parts, the M1A1 Abrams tank at issue and/or one or more of its component parts created a dangerous condition for Marines training in the M1A1 Abrams tank at issue thereby subjecting them to an unreasonable risk of fire, injury and damage.

31. On or about April 16, 2017, Plaintiff's platoon was conducting a non-live crew gunnery training evolution. During this evolution, Plaintiff was operating M1A1 Abrams Tank S/N 579692, when the tank and/or one or more of its component parts malfunctioned resulting in an explosion and fire seriously injuring Plaintiff. But for Defendant GDLS and DOES 1-100's conduct, the incident in question and Plaintiffs' injuries and damages would not have occurred.

32. At all times herein mentioned, Defendant GDLS and DOES 1-100 had a duty to exercise reasonable care in the manufacture, assembly, inspection, testing, marketing, maintenance, repair, warranty, sale, distribution, delivery, and performance of other services for the M1A1 Abrams tank at issue and/or one or more of its component parts.

33. In addition, in the event the manufacturing, assembly, inspection, testing, marketing, maintenance, repair, warranty, sale, distribution, delivery, and performance of other services for the M1A1 Abrams tank at issue and/or one or more of its component parts was subcontracted by Defendant GDLS to a Doe Defendant, Defendant GDLS owed a non-delegable duty to utilize special safeguards and precautions, as established by contract and the Marine and Department of Defense statutes and regulations to ensure the safety of all Marines and of Plaintiff operating the M1A1 Abrams tank at issue on MCAGCC and to provide a product that conformed to the specifications requested.

34. Defendants breached their duty of reasonable care to Plaintiff in that they negligently manufactured, assembled, inspected, tested, marketed, maintained, repaired, warrantied, sold, distributed, delivered, and performed other services for the M1A1 Abrams tank at issue and/or one or more of its component parts.

35. Defendants were negligent, negligent per se, and grossly negligent, and acted recklessly, intentionally, and/or with an utterly wanton disregard for the rights and safety of Plaintiff and others for failure to provide a product which conformed to the contractual

specifications for the tank at issue and/or one or more of its component parts and failure to properly manufacture the tank at issue and/or one or more of its component parts.

36. Defendants knew or should have known that Marines who operated the tank at issue, such as Plaintiff, would foreseeably suffer injury as a result of the Defendants' conduct. Specifically, Defendants knew or should have known that Marines who operated the tank at issue would not and could not reasonably be expected to avoid the dangerous conditions caused by Defendants' negligent conduct and that, as a result, Plaintiff would be injured as herein alleged.

## SECOND CAUSE OF ACTION

## (STRICT PRODUCT LIABILITY)

COMES NOW, Plaintiff, and for her second cause of action against Defendants GDLS and DOES 1-100, and complains and alleges as follows:

37. Plaintiff hereby re-alleges and incorporates herein by reference all the prior paragraphs.

38. At all relevant times Defendants GDLS and DOES 1-100 was the, manufacturer, distributor and seller of the specific Abrams tank, which is the subject of this lawsuit.

39. At the time of the flight in question, the Abrams tank operated by Plaintiff and his fellow marines in substantially the same condition as it was when it left Defendants GDLS and DOES 1-100's possession.

40. At all relevant times, Plaintiff and his fellow marines used the Abrams tank in a way that was reasonably foreseeable to Defendants GDLS and DOES 1-100 and the Defendants GDLS and DOES 1-100 failure to provide a tank that conformed to the specifications requested and required was a substantial factor in causing the subject fire and resulting injuries and damages to Plaintiff.

41. At all relevant times the Abrams tank was defective and unreasonably dangerous.

42. By virtue of the deviations from required specifications, defects, and conditions in the subject tank, the risks associated with the deviations, defects, and conditions, far outweigh any benefits taking into account the potential harm to the tank occupants, the likelihood that this harm

would occur, the existence of several alternative designs at the time of the design and manufacture and the cost of safer alternative designs

43. The subject tank's failure to perform safely and failure to conform to the contractual specifications were substantial factors in causing harm and damages to Plaintiff.

44. Additionally, the subject tank was dangerous and defective in that the product lacked sufficient instructions and warnings for safe use.

45. Defendants GDLS and DOES 1-100 manufactured, distributed and sold the subject tanks with certain risks which were known or knowable by Defendants GDLS and DOES 1-100 and were within the realm of scientific knowledge available to Defendants GDLS and DOES 1-100 at the time of its manufacture, distribution and sale.

46. The risks associated with tank occupied by Plaintiff and his fellow marines presented a substantial danger to Plaintiff and others.

47. The USMC, Plaintiff, and his fellow marines, as intended users of the tank, would not have recognized the potential risks associated with their use of the Defendants GDLS and DOES 1-100 tank.

48. Defendants GDLS and DOES 1-100 therefore failed to adequately warn and instruct users, including Plaintiff and his fellow marines, of the potential risks associated with its product.

49. At all relevant times, Plaintiff and his fellow marines used the subject tank in a way that was reasonably foreseeable to Defendants GDLS and DOES 1-100. As a result of the lack of sufficient instructions and warnings for safe use, Plaintiff was harmed and sustained serious personal injuries and damages.

50. The lack of sufficient instructions or warnings for safe use of the tank was a substantial factor in causing the subject fire, the resulting harm to Plaintiff.

### THIRD CAUSE OF ACTION
### (BREACH OF WARRANTIES)

COMES NOW, Plaintiff, and for her third cause of action Defendants GDLS and DOES 1-100, and complains and alleges as follows:

51. Plaintiff hereby re-alleges and incorporates herein by reference all the prior paragraphs.

52. GDLS and DOES 1-100 expressly and impliedly represented that the subject tank was safe and conformed to the requisite specifications.

53. GDLS and DOES 1-100 did not disclose to Plaintiff or the USMC that the tank did not conform to requisite specification, was prone to fires, or that it was not fit for its intended purpose and/or safe for its intended use.

54. At all times GDLS and DOES 1-100 held itself out to purchasers and intended users, including the USMC, Plaintiff, and his fellow marines, as the world's leading producer of main combat tanks such as the subject Abrams and for being known for manufacturing and delivering tanks that would conform to the standards and specifications requested.

55. In the condition in which the tank was sold and delivered to the USMC, it was not suitable for its intended purpose and use, resulting in harm and damages to Plaintiff.

56. At the time of the purchase, GDLS and DOES 1-100 knew or had reason to know that Plaintiff and his fellow marines intended to use the product for a particular purpose.

57. At the time of purchase, GDLS and DOES 1-100 knew or had reason to know that Plaintiff and his fellow marines would rely upon GDLS and DOES 1-100 skill and judgment to select or furnish a product that was suitable for the particular purpose.

58. The USMC, Plaintiff and his fellow marines justifiably relied on GDLS and DOES 1-100 skill and judgment in making the decision to purchase and utilize the subject tank.

59. With its inherent manufacturing defects, non-conformance to requisite specifications, and lack of adequate warnings and instructions, the product was not suitable for the particular purpose.

60. As a result of the unsuitability of the product and its failure to meet the intended purposes, Plaintiff sustained serious injuries and damages. Plaintiff was damaged as a result of GDLS and DOES 1-100 failure to provide a product suitable for the particular purposes for which it was utilized by Plaintiff and his fellow marines.

00523027-1

9

COMPLAINT FOR DAMAGES

61. GDLS and DOES 1-100 failure to provide a tank suitable for Plaintiff's use was a substantial factor in causing Plaintiff's injuries and damages.

62. GDLS and DOES 1-100 expressly represented that the tank was safe and in conformance and compliance with requisite specifications when, in fact, it was not as represented.

63. GDLS and DOES 1-100 made assurances to the USMC that the tank was safe and that it conformed to the requisite standards and specifications along with GDLS and DOES 1-100's method of manufacturing, assembling, testing, and delivering such tanks.

64. Contrary to the express representations made by GDLS and DOES 1-100, the tank contained dangerous defects and conditions which were accompanied by inadequate warnings and instructions for safe use, rendering it unsafe and therefore not manufactured, distributed and sold as expressly represented by GDLS and DOES 1-100.

65. GDLS and DOES 1-100 failure to deliver the product as expressly or impliedly represented was a substantial factor in causing the fire and damages to Plaintiff.

66. The conduct of GDLS and DOES 1-100 was a substantial factor and proximate cause of the serious personal injuries sustained by Plaintiff.

## FOURTH CAUSE OF ACTION

## (EXEMPLARY DAMAGES)

COMES NOW, Plaintiff, and for her third cause of action Defendants GDLS and DOES 1-100, and complains and alleges as follows:

67. Plaintiff hereby re-alleges and incorporates herein by reference all the prior paragraphs.

68. The above described conduct of Defendants GDLS and DOES 1-100 by, through, and under their officers, directors, employees, and their managing agents, was in conscious disregard of Plaintiff's rights and the safety of consumers and, therefore, Plaintiff is entitled to and seeks and award of exemplary or punitive damages pursuant to California Code of Civil Procedure § 329.4 in an amount sufficient to punish, deter, and prevent GDLS and DOES 1-100 from engaging in such conduct in the future up to the limits of their financial condition and to make an example of them for the benefit of the public and those who may suffer future harm resulting from

the unusually dangerous and preventable characteristics of GDLS and DOES 1-100's Abrams tank.

69. Plaintiff is informed and believes, and thereupon alleges that, prior to April 16th, 2017 GDLS and DOES 1-100 acted with malice in that they engaged in despicable conduct and consciously disregard the rights, safety, and welfare of the Plaintiff thereby entitling Plaintiff to an aware of punitive damages. Prior to the subject incident, GDLS and DOES 1-100 had knowledge that its tank had unreasonable risks of fires and that it deviated from requisite specifications. GDLS and DOES 1-100 nevertheless consciously chose to ignore these known risks of fires without warning to consumers and users. Further GDLS and DOES 1-100's conduct after the incident is further evidence of their conscious disregard for the safety of consumers and users. GDLS and DOES 1-100 failed to take steps to eliminate or reduce the dangers in its product to protect members of the consuming public. For engaging in this conduct GDLS and DOES 1-100 should be made an example and caused to incur financial penalty through exemplary or punitive damages. Said acts and omissions were ratified by managerial employees of GDLS and DOES 1-100 and all were carried out with the consent of the officers, directors, and/or managing agents.

## DAMAGES

70. As a proximate result of Defendants' conduct, Plaintiff sustained severe burns and other injuries to his body which resulted in physical pain, mental anguish, disfigurement, disability, and other medical problems. Plaintiff has sustained severe pain, physical impairment, disability, disfigurement, discomfort, mental anguish, and distress. In all reasonable probability, Plaintiff's physical pain, physical impairment and mental anguish will continue indefinitely. Plaintiff has also suffered a loss of earnings in the past, as well as a loss of future earning capacity. Plaintiff has incurred and will incur pharmaceutical and medical expenses in connection with his injuries.

71. Plaintiff is also entitled to and seeks punitive damages against Defendants because the aforementioned actions of Defendants were to the level of culpability that gives rise to such damages. Defendants' actions and/or omissions were malicious, willful, reckless, and wanton.

Plaintiff's injuries were caused by malicious, willful, reckless, or wanton acts or omissions of Defendant and/or their employees, agents, or representatives.

### PRAYER FOR DAMAGES

WHEREFORE, in accordance with California Code of Civil Procedure § 425.10 Plaintiff prays for judgment as follows against all Defendants:

1. For general damages in an amount in excess of Fifty Thousand Dollars ($50,000.00);
2. For economic damages in an amount to be determined according to proof;
3. For past and future medical care expenses of Plaintiff according to proof;
4. For past and future loss of earnings (and/or profits) of Plaintiff according to proof;
5. For past and future physical pain and discomfort;
6. For past and future mental anguish and distress;
7. For past and future disfigurement;
8. For past and future disability;
9. For past and future fright, nervousness, anxiety, worry, and apprehension;
10. For past and future loss of consortium;
11. For pre-judgment and post-judgment interest according to proof;
12. For costs as provided by law; and
13. For all such other relief as the Court deems necessary, just and proper.

DATED: April 11, 2019            KIESEL LAW LLP

By: /s/ Paul R. Kiesel
Paul R. Kiesel
Melanie Palmer

**ARNOLD & ITKIN**
Jason A. Itkin (*Pro Hac Vice* Pending)
Noah M. Wexler (*Pro Hac Vice* Pending)

*Attorneys for Plaintiff Matthew Maddux*

## DEMAND FOR JURY TRIAL

Plaintiff Matthew Maddux hereby demands a trial by jury to the full extent permitted by law.

DATED: April 11, 2019

**KIESEL LAW LLP**

By: *[signature]*
Paul R. Kiesel
Melanie Palmer

**ARNOLD & ITKIN**
Jason A. Itkin (*Pro Hac Vice* Pending)
Noah M. Wexler (*Pro Hac Vice* Pending)

*Attorneys for Plaintiff Matthew Maddux*